IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20CV409-GCM

| | |
|---|---|
| VRX USA, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| VRX VENTURES, LTD and ROBERT A. STANNERS, | ) |
| Defendants. | ) |

This matter is before the Court upon Plaintiff's Partial Motion to Dismiss Defendants' Counterclaims. The motion has now been fully briefed and is ripe for disposition.

## I.   FACTUAL BACKGROUND

Plaintiff VRX USA LLC ("VRX USA") filed a Verified Complaint seeking to recover funds from Defendants on a $350,000 promissory note and guaranty (the "Note"). In response, Defendants admit that they did not repay the Note but deny that money was owed. (Answer, Doc. No. 8, ¶¶ 1, 18). In addition to their Answer, Defendants filed seven counterclaims seeking at least $10 million in actual damages and $100 million in punitive damages. In their Counterclaims, Defendants allege the following facts relevant to this Motion:

Defendant VRX Ventures, Ltd. ("Ventures") sells driving simulator products. (Countercl. ¶ 5). At some unspecified time, Defendants entered "into a common law partnership or joint venture" with VRX USA to promote the sale of simulator products "in the United States and worldwide." (*Id.*). Defendants do not identify any commonly owned assets of the "partnership or joint venture." Rather, Defendants allege they exclusively owned all the assets, including:

- Unspecified "property, funds and assets of Stanners and Ventures." (*Id.* at ¶ 13).

1

- "Their" (Ventures' and Stanners') "tangible personal property," "contracts, purchase orders and payments." (*Id.*).

- Accounts receivable in the amount of $93,000.00 "belonging to" Ventures and Stanners. (*Id.* at ¶ 14).

- RACER X simulator equipment and technology "belonging to Stanners and Ventures." (*Id.*).[1]

- Common law trademark rights to the alleged VRX trademark that "Ventures and Stanners own." (*Id.* at ¶ 17).[2]

- The "structure and design of the Ventures VRX simulators," which Defendants claim is a trade secret "belonging to Ventures and Stanners." (*Id.* at ¶ 19).

Defendants also do not allege the parties had any agreement to share profits, or that they ever in fact shared profits. There are no allegations that the parties ever filed a partnership tax return, established partnership bank accounts, held themselves out to the public as partners, obtained any state partnership license, hired any employees for the partnership, or incurred any joint expenses.

Defendants allege they entered into two contracts with VRX USA: the Note and a "partnership and joint venture agreement." (*Id.* at ¶ 42). They do not attach any formal written partnership agreement or allege that it was memorialized in writing. Nor do they identify any of the terms of the alleged "partnership and joint venture agreement."

---

[1] Defendants brought counterclaims for conversion, detinue, and replevin for this equipment. (*Id.* at ¶¶ 44–52).

[2] Based on their alleged ownership of this trademark, Defendants brought a counterclaim against VRX USA for trademark infringement. (*Id.* at ¶¶ 53–60).

According to Defendants, the reason for this partnership was to allow them to benefit from the "fame, reputation and contacts of Ryan Newman," who is the racecar driver husband of VRX USA's owner, Krissie Newman. (*Id.* at ¶ 6). Defendants claim VRX USA and Ms. Newman "misrepresented her relationship and association with Ryan Newman and Ryan Newman Motorsports" (*id.* at ¶ 8), although they do not state when this misrepresentation was made, what she represented the relationship to be, or what the actual relationship was. Defendants go on to allege she committed adultery with a "paramour," which allegedly "frustrated the primary purpose of the parties' relationship," which was to allow Defendants to benefit from an association with Mr. Newman. (*Id.* at ¶ 6).

Defendants allege VRX USA made three other misrepresentations over the course of their relationship:

- VRX USA allegedly misrepresented that the Note "was a bridge loan to be folded into a subsequently planned equity investment by [VRX USA] in Ventures," when VRX USA's supposed true plan was to "steal and destroy the business." (*Id.* at ¶ 8). They do not state when this alleged misrepresentation occurred.
- Defendants claim that during the negotiation of the Note, VRX USA misrepresented that attorney John Miller was "representing [Defendants'] interests and was also their attorney," when he in fact only represented VRX USA and Ms. Newman. (*Id.* at ¶ 10).
- Defendants allege VRX USA "lied about and misrepresented the expenditures they supposedly have made on behalf of the partnership and joint venture." (*Id.* at ¶ 21). They do not allege when this alleged misrepresentation was made or what action VRX USA took in reliance on it.

Defendants next allege VRX USA took several actions to "steal and destroy the business, trademark, know-how, technology and employees of Ventures and Stanners." (*Id.* at ¶ 8). Those allegations include:

- Defendants claim that rather than transfer $350,000.00 to Ventures in return for the Note, VRX USA claimed to have used those funds to pay "ridiculous, inflated expenses." (*Id.* at ¶ 7).
- Defendants claim VRX USA misappropriated Defendants' trade secrets, which they describe as the "structure and design" of their simulators without any further explanation. (*Id*. at ¶ 19). Other than alleging VRX USA is "misappropriating and misusing" the technology for its "own exclusive benefit" (*id*.), they do not identify any acts of misappropriation.
- Defendants claim VRX USA is infringing Defendants' common law rights in the VRX trademark. (*Id*. at ¶¶ 17–18).
- Defendants allege VRX USA sabotaged a profitable business deal with a distributor, Nagra, that was worth $25 million. (*Id*. at ¶ 16).
- Defendants allege VRX USA stole its equipment (including a $300,000 simulator) and accounts receivable (including a $93,000 order). (*Id*. at ¶¶ 14–15).

Plaintiff seeks to dismiss Defendants' Counterclaims for fraud, breach of fiduciary duty, breach of contract, and misappropriation of trade secrets.

## II. DISCUSSION

### A. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). The Court must "accept as true all well-pleaded

4

facts in a complaint and construe them in the light most favorable to the plaintiff.*" Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). "However, legal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth." *Id.* (citations and quotations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires allegations showing more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "[T]he complaint must allege sufficient facts to establish th[e] elements [of the claim]," and "must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).

### B. Fraud

"The elements of fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Malone v. Topsail Area Jaycees, Inc.*, 439 S.E.2d 192, 194 (N.C. Ct. App. 1994) (internal quotations and citations omitted). "[A] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Conclusory allegations of fraud are insufficient to meet the requirement of particularity. *Barber v. Countrywide Home Loans, Inc.*, No. 2:09-CV-40-GCM, 2010 WL 398915, at *2 (W.D.N.C. Jan. 25, 2010).

To meet Rule 9(b)'s particularity requirement, the complaining party must "*at a minimum*, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (internal quotations and citations omitted) (emphasis in original). "These facts are often referred to as the who, what, when, where, and how of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotations and citations omitted). There are at least four purposes of this rule: (1) "providing notice to a defendant of its alleged misconduct," (2) "preventing frivolous suits," (3) eliminating "fraud actions in which all the facts are learned after discovery," and (4) protecting "defendants from harm to their goodwill and reputation." *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (citation omitted).

A reading of Defendants' Counterclaim allegations makes it abundantly clear that they have failed to meet the Rule 9(b) particularity requirements. As an initial matter, they never allege when or how any of the alleged misrepresentations were made or what VRX USA obtained as a result of the alleged misrepresentations. These facts are critical to "providing notice to [VRX USA] of its alleged misconduct." *See id.* Without these facts, VRX USA is unable to pinpoint the precise communication in which it allegedly made the misrepresentations. Nor can VRX USA identify what actions Defendants allegedly took in reliance on the alleged misrepresentations.

Defendants first allege VRX USA "lied about and misrepresented the expenditures they supposedly have made on behalf of the partnership and joint venture." (Countercl. ¶ 21). Merely describing the general subject matter of the alleged misrepresentations—specifically, that they concerned expenditures—is too "vague and conclusory" to survive Rules 9(b) and 12(b)(6). *See*

6

Case 3:20-cv-00409-GCM    Document 18    Filed 12/08/20    Page 6 of 16

*Walker v. SGB Corp.*, No. 3:12-CV-145-FDW-DCK, 2012 WL 4753303, at *4 (W.D.N.C. Oct. 4, 2012); *see also Madison Maidens, Inc. v. Am. Mfrs. Mut. Ins. Co.*, No. 05 Civ. 4585 LTSJCF, 2006 WL 785270, at *2 (S.D.N.Y. Mar. 27, 2006) (explaining that "identifying the general subject matter of the alleged misrepresentations" is insufficient where the complaint "still fails to supply such necessary detail as the identity of the speaker, the specific statements made, and the occasions on which they were communicated").

Here, Defendants do not provide the necessary detail. In their response brief, they identify one specific expenditure—an alleged $450,000 salary paid to Joe Schwankhaus, which they describe as "ridiculously inflated, unreasonable, unearned, and never approved." (Doc. No. 15, pp. 5–6). However, criticizing the salary as undeserved does not render the salary fraudulent. To the extent Defendants allege VRX USA wrongfully represented the salary was proper, that is an opinion that does not, by definition, constitute fraud. *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974) ("A subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects, must be misrepresented."). Finally, Defendants have not alleged any reliance—the fourth element of fraud—regarding their allegation of misrepresentations of expenditures. They have not alleged this representation caused them to enter into the Note or take any other action. Courts have dismissed fraud claims under these same circumstances for failure to plead reliance. *See, e.g., Robichaud v. Engage2Excel, Inc.*, No. 5:18-CV-00086-GCM, 2019 WL 2076561, at *4 (W.D.N.C. May 10, 2019).

Defendants next allege that VRX USA, through Ms. Newman, misrepresented its "relationship and association" with Ryan Newman and Ryan Newman Motorsports. (Countercl. ¶ 22). Again, Defendants describe the general subject matter without providing the specific content of the misrepresentation, which does not satisfy Rule 9(b). *See Madison Maidens*, 2006

7

WL 785270, at *2. Defendants never allege what VRX USA claimed its relationship with Mr. Newman to be. Moreover, Defendants fail to allege the time of Ms. Newman's alleged misrepresentation about her relationship with Mr. Newman. This alleged misrepresentation does not support Defendants' fraud counterclaim.

With regard to Defendants' allegation that the Note was "intended" to be a bridge loan for a future equity investment, this allegation fails because it is well established that a party "cannot predicate an action for fraud upon statements which are promissory in nature at the time they are made and which relate to future actions and conduct." *Global Hookah Distributors, Inc. v. Avior, Inc.*, 401 F. Supp. 3d 653, 658 (W.D.N.C. 2019) (citation omitted).

Finally, Defendants allege VRX USA falsely represented attorney John Miller was "representing their interests and was also their attorney," when in fact, Attorney Miller "represented only the interests of [VRX USA] and Newman." (Countercl. ¶ 24). As a result, Defendants signed the Note which contained "absurd and unfair terms." (*Id*. at ¶ 25). Specifically, Miller advised defendants to "secure a loan of only $350,000" with "over $10 million in stock collateral." (*Id*.) In addition, Defendants allege the Note had "no clear expression or statement of anything that [VRX USA] or Newman had provided or would provide in return, and with no mechanism for [Defendants] to approve, disapprove, review or audit any expenses or payments that supposedly were going to [be] made in their best interest and in the best interests of the partnership and joint venture." (*Id*. at ¶ 24).

> Any reliance on allegedly fraudulent representations must be reasonable. When the party relying on a false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence.

8

*Provectus Biopharmaceuticals, Inc. v. RSM US LLP*, No. 17 CVS 10396, 2018 WL 4700371, at *20 (N.C. Super. Sept. 28, 2018) (internal quotations and citations omitted). Ordinarily, the reasonableness of a party's reliance is a jury question. *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007). However, where the facts are so clear that they support only one conclusion the court may decide reasonableness as a matter of law. *See id.* Here, Defendants' own allegations demonstrate that their reliance on any fraudulent misrepresentations was not reasonable. The Note is alleged by Defendants to contain "absurd and unfair terms" as well as a wildly disproportionate collateral requirement. They allege that the Note had "no clear expression or statement of anything that [Plaintiff] had provided or would provide in return, and with no mechanism for [Defendants] to approve, disapprove, review or audit any expenses or payments that supposedly were going to [be] made in their best interest and in the best interests of the partnership and joint venture." Any reliance by Defendants on a statement that Attorney Miller was "representing their interests and was also their attorney" is unreasonable based on these allegations.

In their response brief, Defendants attempt to salvage their misrepresentation claim by couching it as one for constructive fraud. "A claim for constructive fraud is fundamentally different from a claim for actual fraud . . . ." *Provectus*, 2018 WL 4700371, at *21. The legal theories underlying the causes of action are "distinct," and they require proof of different elements. *Id.* at *22. Defendants' counterclaim does not assert a cause of action for constructive fraud; does not allege the elements of constructive fraud; and does not even contain the words "constructive fraud."

### C. Breach of fiduciary Duty

To establish a claim for breach of a fiduciary duty, a party must allege that (1) the opposing party owes them a fiduciary duty of care; (2) the opposing party violated that fiduciary

9

duty; and (3) proximately caused damages. *French Broad Place, LLC v. Asheville Sav. Bank, S.S.B.*, 816 S.E.2d 886, 899 (N.C. Ct. App. 2018). Defendants base their fiduciary duty counterclaim on the alleged existence of a partnership with VRX USA. (Countercl. ¶ 33).[3]

A partnership is "an association of two or more persons to carry on as co-owners [of] a business for profit." N.C. Gen. Stat. § 59-36(a). There are two "indispensable elements" for a partnership: "sharing of any actual profits" and "co-ownership of the business." *Wilder v. Hobson*, 398 S.E.2d 625, 627 (N.C. Ct. App. 1990). Failure to plead these elements (through these factors) is fatal to any claim based on the existence of a partnership. *See La Familia Cosmovision, Inc. v. Inspiration Networks*, No. 13 CVS 1079, 2014 WL 5342583, at *6 (N.C. Super. Oct. 20, 2014) (dismissing accounting claim that was contingent on the existence of a partnership when complaint lacked any allegations of co-ownership of assets, and the agreement stated that each party would be responsible for their own expenses). In addition to these elements, courts have identified several other factors that support the existence of a partnership, including:

- The filing of a partnership tax return;
- The establishment of partnership bank accounts;
- Holding an association out to the public as a partnership;
- Obtaining state licensing as a partnership;
- Hiring employees and incurring expenses on behalf of the business; and
- Contributions of capital by each member of the alleged partnership.

*In re Brokers, Inc.*, 363 B.R. 458, 469 (M.D.N.C. 2007) (citations omitted).

---

[3] Partners in a partnership owe each other fiduciary duties. *Carcano v. JBSS, LLC*, 684 S.E.2d 41, 54 (N.C. Ct. App. 2009).

As an initial matter, Defendants have not pleaded any of these elements or factors. Their Counterclaim contains the conclusory allegation that the parties "entered into a common-law partnership or joint venture to promote the development and sale of advanced driving simulator products in the United States and worldwide." (Countercl. ¶ 5). Defendants do not allege that the parties agreed to share profits or co-own property, nor do they allege that any of the *In re Brokers* factors are present. The failure to plead these necessary allegations is fatal to their Counterclaim.

Rather than plead factual allegations that support the existence of a partnership, Defendants' allegations actually *negate* the existence of a partnership. For example, contrary to the requirement of co-ownership of property, Defendants allege the simulator technology "belong[s] to Ventures and Stanners." (*Id.* at ¶ 19). They allege it is a trade secret that VRX USA could only use with Defendants' permission. (*Id.*). Defendants further allege that they—and not VRX USA —owned the RACER X simulation equipment for which Defendants now bring counterclaims for conversion, detinue, and replevin. (*Id.* at ¶¶ 44–52). Likewise, contrary to the requirement of sharing of profits, Defendants allege VRX USA paid expenses for which it expected reimbursement from Defendants (*Id.* at ¶ 7); and VRX USA took profits that were rightfully owed to Defendants. (*Id.* at ¶ 14). Far from sharing profits and losses, these allegations show the parties managed their own affairs and expected certain revenues and costs would be borne exclusively by one party or the other. Because the Counterclaim fails to plausibly allege a partnership, Defendants' breach of fiduciary duty claim must be dismissed.

### D. Breach of Contract

To state a breach of contract claim, a plaintiff must allege "the existence of a contract between plaintiff and defendant, the specific provisions breached, the facts constituting the

breach, and the amount of damages resulting to plaintiff from such breach." *RGK, Inc. v. U.S. Fid. & Guar. Co.*, 235 S.E.2d 234, 238 (N.C. 1977). Defendants allege that VRX breached the Note and the "partnership and joint venture agreement." (Countercl. ¶ 42).

With regard to the Note, Defendants allege that it was breached in the following ways: (1) "dealing dishonestly with Ventures and Stanners," (2) "submitting false, inflated and unreasonable investment and expense reports and claims," (3) "misleading and defrauding them into signing the Promissory Note," (4) "adopting the LLC's infringing use of the VRX trademark and name without authorization or promise," (5) "stealing equipment and orders from Stanners and Ventures," and (6) "sabotaging and interfering with profitable business deals and contracts." (*Id.*).

A review of the Note, however, reveals that it contained no obligations regarding submission of invoices, adoption of trademarks, use of equipment, handling of orders, or management of business deals with third parties. (Doc. 1-1). The Note concerns one issue—Ventures' and Stanners's obligation to pay the amount due. It does not address the larger business arrangement between VRX USA and Defendants. Defendants cannot shoehorn their grievances against VRX into a breach of contract counterclaim where the express terms of the Note simply do not prohibit the conduct described in Defendants' Counterclaims. Nor can Defendants use the implied covenant of good faith and fair dealing to write new obligations into the Note that do not exist in the written agreement. The implied covenant "does not permit plaintiff to supply a missing term" into a contract. *Dillon v. Leazer Group, Inc.,* 374 F. Supp. 3d 547, 556 (E.D.N.C. 2019). This is because an "implied term cannot be used to contradict the express terms of the contract." *Id*. Accordingly, the Note provides no basis for Defendants' breach of contract counterclaim.

Likewise, Defendants cannot state a claim for breach of the "partnership and joint venture agreement" because, as explained above, they have failed to allege the existence of a partnership.[4] Without a partnership there can be no partnership agreement. *See Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 589 (M.D.N.C. 2004) (dismissing breach of partnership agreement claim based on deficient partnership allegations). Moreover, in the absence of any enforceable partnership agreement, there is no implied covenant of good faith and fair dealing. *See Monticello Grp. of N.C. LLC v. First Tennessee Bank Nat'l Ass'n*, No. 3:19-CV-192-RJC-DSC, 2019 WL 5800212, at *2 (W.D.N.C. July 12, 2019) (finding the implied covenant "requires a viable underlying claim for breach of contract").

Even if Defendants had properly alleged the existence of a partnership, their counterclaim for breach of the partnership agreement still fails because they have not alleged what "specific provisions" of the partnership agreement they allege VRX USA breached. *See RGK*, 235 S.E.2d at 238. When parties fail to list what "specific provisions" have been breached, the necessary result is dismissal. *See*, *e.g.*, *Sides v. Athene Annuity & Life Co.*, 3:19CV703-GCM, 2020 WL 2114380, at *3 (W.D.N.C. May 4, 2020) ("It appears to the Court that Plaintiffs have failed to allege any breach of specific provisions of the contract. Accordingly, they have failed to state a plausible claim for breach of contract."). "Failure to allege the specific contract terms which were breached by Defendants . . . obviously fall[s] far short of the line of plausibility of entitle[ment] to relief." *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 WL 3880667, at *5 (W.D.N.C. Sept. 5, 2017) (citations omitted); *see also Houck v. Lifestore*

---

[4] Partnerships and joint ventures are "governed by substantially the same rules." *Pike v. Wachovia Bank & Tr. Co.*, 161 S.E.2d 453, 460 (N.C. 1968). The main difference between a partnership and a joint venture is that a partnership "ordinarily relates to a continuing action." *Id*. Like a partnership, a joint venture also requires "joint sharing of profits." *See Southeastern Shelter Corp. v. BTU, Inc.*, 572 S.E.2d 200, 204–05 (N.C. Ct. App. 2002).

13

*Bank*, No. 5:13-CV-66-DSC, 2014 WL 197902, at *3 (W.D.N.C. Jan. 15, 2014) (ruling that "[b]ald assertions" about "improper" conduct were "insufficient" to allege breach of contract).

### E. Misappropriation of Trade Secrets

Defendants bring their misappropriation of trade secrets Counterclaim under the North Carolina Trade Secrets Protection Act ("TSPA"), N.C. Gen. Stat. § 66-152, *et seq*. The *lex loci* choice of law rule applies to the TSPA. *SciGrip, Inc. v. Osae*, 838 S.E.2d 334, 343 (N.C. 2020). Under this test, "the substantive law of the state where the injury or harm was sustained or suffered, which is, ordinarily, the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place, applies." *Id*. (internal quotations omitted) In other words, "the *lex loci* in trade secret cases is where the misappropriation occurred." *Software Pricing Partners, LLC v. Geisman*, 3:19-cv-00195-RJC-DCK, 2020 WL 3249984, at *9 (W.D.N.C. June 16, 2020). Thus, to state a claim under the TSPA, a party must allege the misappropriation happened in North Carolina. It makes no difference that the one or both of the parties are North Carolina residents. *See SciGrip*, 838 S.E.2d at 344–45 (granting summary judgment on TSPA claim despite fact that both plaintiff and defendant resided in North Carolina). Here, Defendants' counterclaim merely states "Newman and the LLC are misappropriating and misusing the VRX Technology" (Countercl. ¶ 63), without stating where or providing any background that would allow the Court to draw a geographic inference.

Even if Defendants had alleged that the misappropriation occurred in North Carolina, their TSPA claim nevertheless fails because they have not identified the alleged trade secret with sufficient particularity. "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is

14

threatened to occur." *Washburn v. Yadkin Valley Bank & Tr. Co.*, 660 S.E.2d 577, 585 (N.C. Ct. App. 2008) (internal quotations and citations omitted). The pleader must also allege the "acts by which the alleged misappropriations were accomplished." *Id.* at 586. "[A] complaint that makes general allegations in sweeping and conclusory statements" must be dismissed. *Id.* at 585 (internal quotations and citations omitted).

Here, Defendants describe their alleged trade secrets as the "structure and design of the Ventures VRX Simulators" that are the "subject of pending patent applications." (Countercl. ¶ 63). This is precisely the sort of "sweeping and conclusory statement" that has led courts to dismiss trade secrets claims. For example, in *Akzo Nobel Coatings Inc. v. Rogers*, No. 11 CVS 3013, 2011 WL 5316772, at *24 (N.C. Super. Nov. 3, 2011), the court dismissed a TSPA claim where the plaintiff described the alleged trade secrets as "formulas" and "methodologies" concerning its fiberglass door coating products. *See also Daniel Grp., Inc. v. Am. Sales & Mktg., Inc.*, 16 CVS 889, 2016 WL 7435995, at *10 (N.C. Super. Dec. 15, 2016) (dismissing TSPA claim where plaintiff described alleged trade secrets as "compilations of information, methods, techniques, contacts and processes").

Courts have also rejected similarly vague trade secrets descriptions in other procedural contexts. In *Analog Devices, Inc. v. Michalski*, 579 S.E.2d 449, 454 (N.C. Ct. App. 2003), the court affirmed denial of a preliminary injunction under TSPA because the alleged trade secrets— "designs" and "solutions" for analog-to-digital converters—were described too generally. And in *DSM Dyneema, LLC v. Thagard*, No. 13 CVS 1686, 2014 WL 5317770, at *6 (N.C. Super. Oct. 17, 2014), the court refused to allow discovery on a TSPA claim because the plaintiff failed to describe its trade secrets with particularity. The court explained that plaintiff cannot simply claim a "method" or "process" is a trade secret; instead, it must "identify the steps in the process" and

explain "how those steps make [the] method or process unique." *Id*. at *7 (internal quotations and citations omitted). Here, Defendants have merely alleged a general category of trade secrets—the "design" and "structure"—without describing what aspects of the design and structure of the simulators are unique. Under the wealth of case law on this issue, that allegation is deficient.

Defendants have also failed to allege the "acts by which the alleged misappropriations were accomplished." *Washburn*, 660 S.E.2d at 586. It is not enough to state that the accused wrongdoer "acquired" or "used" the trade secrets; such an allegation is "general and conclusory" and requires dismissal. *See id.* Nor is it sufficient to allege the other party "had access to" the trade secrets. *Daniel Grp.*, 2016 WL 7435995, at *10. To survive a motion to dismiss, the plaintiff must make a more specific allegation. *See id.* (suggesting that it would be sufficient to allege the opposing party "downloaded electronically stored information from Plaintiff's computer system").

Here, Defendants' TSPA Counterclaim is completely devoid of any specific acts of misappropriation. Defendants merely allege VRX USA is "misappropriating," "misusing," "infringing," and "refused to stop using" the alleged trade secret. (Countercl. ¶¶ 63, 65). These vague allegations are insufficient to state a claim under the TSPA.

IT IS THEREFORE ORDERED that Plaintiff's Partial Motion to Dismiss is hereby GRANTED, and Defendants' Counterclaims for fraud, tortious breach of fiduciary duty, breach of contract, and misappropriation of trade secrets are hereby DISMISSED.

Signed: December 7, 2020

*[Signature: Graham C. Mullen]*

Graham C. Mullen
United States District Judge